ARK. REAL ESTATE CO., INC. *v.* FULLERTON.

5-2190                                      339 S. W. 2d 947

Opinion delivered November 14, 1960.

*James R. Howard* of *Moses, McClellan, Arnold, Owen & McDermott,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

CARLETON HARRIS, Chief Justice. Appellees Fullerton and Brooks purchased respectively 5,000 and 2,500 shares of stock, at one dollar per share, in Arkansas

Warehouse Corporation from John Yancey, agent for Arkansas Real Estate Company, Inc.[1] Subsequently, appellees instituted suit in the Pulaski County Circuit Court alleging that the stock had been sold to them under fraudulent representations by Yancey; further, that the stock was sold in violation of the Arkansas Securities Act, offered to surrender their stock certificates (which they had previously endeavored to do), and sought a refund of the money paid for such stock. On trial, the jury returned a verdict for appellees in the amounts sought on the basis of fraudulent misrepresentation, and the court entered its judgment accordingly, finding that the stock certificates sold to appellees had been filed with the clerk of the court, and directing that upon satisfaction of the judgments, such certificates be delivered to Arkansas Real Estate Company. From such judgment, appellants bring this appeal; appellees cross-appeal, contending that the court should have granted their motion for a directed verdict because the stock was sold in violation of the Arkansas Securities Act.

As shown by the evidence, the Arkansas Warehouse Corporation was formed for the purpose of building warehouses to be leased, and the corporation had acquired 320 acres of land south of Roosevelt Road and east of the right-of-way for the proposed freeway through Little Rock. According to Brooks, Yancey told him that the corporation had received title to the land by issuing 1,500,000 shares of stock to the Arkansas Real Estate Company. Fullerton stated that Yancey assured him that the land was "already paid for, and it was free and clear, or anyway, there wasn't anything against it; they owned the land." The stock was purchased by appellees in Warren, their home town, Brooks making his purchase on January 23, 1959, and Fullerton making his purchase on February 15th. In March or April, Brooks decided "it would be wise to check" on the title, and following a title examination, appellees endeavored to obtain a return of their money.

---

[1] Yancey was an officer of both Arkansas Real Estate Company, Inc., and Arkansas Warehouse Corporation.

Yancey admitted on the stand that the land was not clear of encumbrances. The record reflects that about twenty acres was subject to a lien of $40,000 under a first mortgage to Bankers Insurance Company, a tax lien against the lands amounted to $3,540, and there was an indebtedness to D. W. Jones of approximately $20,000; in fact, according to Yancey, there was a total indebtedness of about $90,000 at the time the stock was sold to appellees. The witness testified that the indebtedness had subsequently been reduced by about $40,000. Admittedly, the money obtained from Brooks and Fullerton was used for that purpose. Yancey also admitted that a part of the most valuable acreage (6 acres) was not owned by the corporation, but was leased from E. L. Faucett, and that this fact was not told to appellees, Yancey explaining, ''We have a lease for 99 years. If that is not owning it, I'm not going to worry about it. I will not be here, and my kids will not be here.'' The rental on the lease amounted to $100 per month. The record reflects approximately thirty-four transactions involving the transfer of stock, of which sixteen or seventeen were admitted by Yancey to have been outright sales. The others were classified by him as loans, *i. e.,* stock was given as collateral on notes executed by the real estate corporation to such individuals.

Appellant sets out three grounds for reversal, contending that there is no evidence that appellees relied on the representations by Yancey in making their purchases; that the court erred in one of the instructions given; and that testimony should have been allowed wherein appellant sought to establish the value of the land in question. Under the view we take, a discussion of these alleged errors is unnecessary, though it might be stated that all contentions have been thoroughly examined, and found to be without merit. We are of the opinion that the point urged by appellees/cross-appellants in the cross-appeal is at once decisive and determinative of the litigation.

The pertinent portions of Act 397 of 1947, cited as the Arkansas Securities Act[2] (§ 67-1201, Ark. Stats., 1957 Replacement), provide as follows:

§ 67-1206—"No securities, except of a class exempt under Section 5 [§ 67-1205] hereof or unless sold in a transaction exempt under Section 4 [§ 67-1204], shall be sold within this State unless such securities shall have been registered by notification or by qualification as hereinafter defined.  *  *  *"

§ 67-1214 — "It shall be unlawful for any issuer or dealer or representative thereof, either directly or indirectly, to sell or cause to be sold, offer for sale, take subscriptions for, or negotiate for the sale in any manner in this State, any contracts, stocks, bonds, or other securities (except as expressly exempt herein) unless and until said Commissioner has approved and issued his certificate therefor in accordance with the provisions of this Act. . . ."

The term "issuer" is defined by § 67-1202, subsection (e), as one

". . . who proposes to issue or who issues or has issued or shall hereafter issue any security. Any person who acts as a promoter for and on behalf of a corporation, trust or unincorporated association or partnership of any kind to be formed shall be deemed to be an issuer."

Subsection (g) provides:

"Any person, firm, copartnership, corporation or association, whether domestic or foreign, not the issuer, who shall in this State sell or offer for sale any of the stocks, bonds, or other securities of any issuer, or who shall, by advertisement or otherwise, profess or engage in the business of selling or offering for sale such securities, shall be deemed to be a 'dealer' within the meaning of this Act [§§ 67-1201 — 67-1234,] and no such dealer

---

[2] This Act was repealed by Act 254 of 1959, which is also known as the Arkansas Securities Act; the latter act became effective on July 1, 1959, but Act 397 controls this litigation, since the stock was sold to appellees prior to that date.

shall sell or offer for sale any securities, except securities qualified or exempt under the provisions of this Act or except in transactions exempted under the provisions of this Act, or profess the business of selling or offering for sale such securities unless and until he shall have qualified the same in the office of the commissioner as in this Act provided. The term 'dealer' shall not include an owner of such securities who shall acquire and sell same for his own account in the usual and ordinary course of business, and not for the direct or indirect promotion of any speculative enterprise; provided that such ownership is in good faith. Repeated or successive sales of any such securities shall be *prima facie* evidence that the claim of ownership is not bona fide.''

Section 67-1228 provides:

''Every sale or contract for sale of any security made in violation of any of the provisions of this Act [§§ 67-1201—67-1234] shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director or officer of the issuer whose securities are being offered for sale who shall have participated in making such sale shall be jointly and severally liable to such purchaser for the refund of all moneys or property received in payment therefor with interest at the rate of six per centum (6%) from the date of payment until date of refund and all costs and reasonable attorney's fee incurred therein.''

The question in determining whether the motion for directed verdict should have been granted is whether the record places in issue any question of fact relative to the violation of these statutes, or, to state it differently, do the exhibits and testimony reflect, as a matter of law, the violation of the Securities Act.

The only suggestion of any dealings with the Banking Department concerning stock is found in a single line of testimony by Yancey, when he stated, ''I believe there was a stock option when we got permission to issue that from the State Banking Department. We could issue stock in lieu of cash and they also had the option

of taking the six per cent." However, scrutiny of the transcript reveals that this statement referred entirely to loans. Yancey had testified at length regarding loan transactions, and in fact, the quoted statement was in reply to a question, "Now on these loan transactions, was there any agreement that they could turn these notes into common stock of Arkansas Warehouse if they so desired?" There is no doubt of non-compliance with the registration section of the Securities Act, for the parties entered into the following stipulation:

"Neither Arkansas Warehouse Corporation or Arkansas Real Estate Company, Inc., filed a registration statement with the Bank Department of Arkansas for the stock of Arkansas Warehouse Corporation; the State Banking Department has not issued a certificate authorizing the sale of this stock pursuant to the Arkansas Securities Law. That is a stipulation, your Honor."

The first question is whether the sales made by appellants were a violation of the Securities Act. An owner of securities is permitted to make isolated sales (subsection (g), § 67-1204), or sales for his own account in the ordinary course of business. Section 67-1202, subsection (g), heretofore quoted, states in part, "the term 'dealer' shall not include an owner of such securities who shall acquire and sell same for his own account in the usual and ordinary course of business, and not for the direct or indirect promotion of any speculative enterprise; provided that such ownership is in good faith". Certainly, we do not consider that appellants can come under the category "owner", for the evidence clearly reflects that the stocks were sold as a means of directly promoting the enterprise of building warehouses. Sales were made in widely scattered localities over the state, such as Fordyce, Danville, Warren, Russellville, Pine Bluff, and Coy. Furthermore, the aforementioned section provides: *"Repeated or successive sales of any such securities shall be prima facie evidence that the claim of ownership is not bona fide.*[3] Webster's New International Dictionary defines the word "repeated"

---

[3] Emphasis supplied.

as "happening again and again". The record shows at least sixteen or seventeen direct sales, and these were admitted by Yancey. This number of sales cannot be considered "isolated"; in fact, it amounts to one-half of the total transactions prior to the trial.

It makes little difference whether appellants be classified as dealers, promoters, or representatives. The evident fact is that they were engaged in selling stock without first registering same, or obtaining a certificate of approval, and neither the stock nor the transactions were exempt. In other words, under the undisputed facts, appellants, as a matter of law, clearly violated the Securities Act.

At the conclusion of appellees' evidence, they moved the court for a directed verdict on the grounds that the stock was sold in violation of the Arkansas Securities Act. This was denied by the court. Appellants also moved for a directed verdict, which was granted as to Arkansas Warehouse Corporation, and Robert Traylor, officer of Arkansas Real Estate Company and one of the incorporators of Arkansas Warehouse Corporation, but the motion was denied as to appellants herein. At the conclusion of all the evidence, appellants again moved for a directed verdict, which was denied, and counsel for appellees again moved for a directed verdict for Brooks and Fullerton on the same ground as the first motion. The court ruled that it had concluded to let the matter go to the jury on the ground of misrepresentation only; thereafter, appellees requested the court to submit the issue relative to violation of the Securities Act to the jury specially, but the court stated: "I am overruling the plaintiffs' motion for an instructed verdict which would, in effect, rule out the question of the Securities Act". Both sides then offered instructions on the question of misrepresentation, and the case was submitted to the jury on that phase only. The fact that each side moved for a directed verdict is of no significance in this case; had a fact question been involved, and no instructions to the jury requested, this action could have had the effect of waiving a jury trial, and submitting the

issues to the court. However, as set out in this Opinion, there was no question of fact left for the court to decide. In 53 Corpus Juris Secundum, § 77, p. 792, we find:

"A transaction involving securities will ordinarily be presumed to comply with the applicable Blue Sky Laws, and the burden of proving a violation is on the party asserting it. Thus, in an action to recover the consideration paid as the purchase price of a security on the ground that the transaction was in violation of the Blue Sky Law, the burden is on plaintiff to prove such violation and the presence of all the elements necessary to warrant recovery under the act. Defendant, on the other hand, has the burden of proving defensive matters. Thus, if defendant relies on ratification as a defense, he has the burden of proving it. Also defendant has the burden of proving that stock sold in violation of the statute was within statutory exemptions."

The testimony of appellants did not establish a defense; nor is any defense to violation of the Securities Act argued in the briefs. As stated in *Plunkett* v. *Winchester*, 98 Ark. 160, 135 S. W. 860:

"The admitted facts showing plaintiffs entitled to relief sought, there was no question for the jury, and the verdict was properly directed."

Also in 5B, Corpus Juris Secundum, § 1929, p. 440:

"Where plaintiff has made out a prima facie case, the facts are practically undisputed and the amount of recovery certain, and defendant, although having full opportunity to do so, has established no defense sufficient to prevent or bar the right of recovery, the appellate court, on reversing a judgment in defendant's favor, will sometimes render the proper judgment for plaintiff, or direct the court below to do so."

Here, appellees, not once, but twice, requested the court to direct a verdict in their favor on the point herein discussed. While no exception was saved to the court's ruling in refusing to do so, this was unnecessary under the provisions of Act 555 of the General Assembly

of 1953 (§ 27-1762, Supplement, Ark. Stats. Anno.), which provides:

". . . but for all purposes for which an exception has heretofore been necessary, it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take. * * *"[4]

Appellees made known the action which they desired the trial court to take, and their reason therefor, and the court erred in not granting the motion.

Accordingly, the judgment, insofar as it relates to these appellees, is reversed, and the cause remanded to the circuit court with directions to enter judgment for appellee Fullerton in the sum of $5,000, and appellee Brooks in the sum of $2,500, together with interest at the rate of 6% per annum, costs, and a reasonable attorney's fee.

---

[4] No question is raised about the sufficiency of the motion.